THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| GARY ROZIER, | : |
| Plaintiff, | : |
| | : Civil Action |
| v. | : No. 5:05-cv-243 (CAR) |
| AETNA LIFE INSURANCE COMPANY, | : |
| Defendant. | : |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Gary Rozier brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to recover long-term disability ("LTD") benefits he claims Defendant Aetna Life Insurance Company ("Aetna") owes him. Currently before the Court are Plaintiff's and Defendant's cross motions for summary judgment. Upon review of the claims file, other evidence submitted by the parties, the arguments of counsel, and the relevant legal authorities, the Court finds that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. Accordingly, Aetna's motion for summary judgment [Doc. 14] is hereby **GRANTED** and Plaintiff's motion for summary judgment [Doc. 16] is hereby **DENIED**.

**I.     Factual Background**

Plaintiff's employer, HCA Healthcare Corporation ("HCA"), provided a Long Term Disability Insurance Plan to its employees, including Plaintiff, through a group policy issued by Aetna (the "Plan"). It is undisputed that the Plan qualifies as an employee welfare benefit plan and is therefore governed by ERISA.

1

Plaintiff began working for HCA as a Planning Construction Coordinator on March 8, 1976. On June 2, 1998, Plaintiff was unable to continue working due to Non-Hodgkin's Lymphoma ("NHL") and other medical impairments. Plaintiff applied for LTD benefits under the Plan, and Aetna found him disabled and approved his LTD claim. Aetna paid LTD benefits to Plaintiff from November 2, 1998 through December 28, 2000. During that time, Plaintiff recovered from a September 1998 bone marrow transplant and was later pronounced "disease free" of NHL. During an at home visit on November 2, 2000, and again during a telephone conversation on November 10, 2000, Plaintiff informed Aetna representatives that he would be returning to full-time employment on December 29, 2000. Based on that information, Aetna terminated Plaintiff's LTD benefits on December 28, 2000. In fact, Plaintiff returned to full-time work three weeks earlier on December 4, 2000, at an HCA affiliated hospital, Skyline Medical Center in Nashville, Tennessee.

Plaintiff's return to work was short-lived. He worked from December 4, 2000, through March 9, 2001, when his position was eliminated. HCA paid Plaintiff severance pay from March 11, 2001, through September 8, 2001, the date he was officially terminated. In November 2001, Plaintiff's wife contacted Aetna and sought to have Plaintiff's LTD benefits reinstated. At that time, HCA had transferred insurance carriers from Aetna to UNUM Life Insurance Company of America ("UNUM"); Aetna's coverage of the policy had terminated on December 31, 2000, and UNUM's coverage had commenced on January 1, 2001. Although Aetna's coverage of the policy had previously terminated, Plaintiff sought to have his LTD benefits reinstated under the "Separate Provisions of Disability" of the Plan. That provision provides that under certain circumstances, separate periods of disability may be joined. It states:

> Once a period of total disability has ended, any new period of
> disability will be treated separately.
>
> However, 2 or more separate periods of total disability due to the
> same or related causes, which are separated by less than 3 months,
> will be deemed to be one period of total disability. Only one
> waiting period will apply.
>
> Any day on which, solely due to disease or injury, your income is
> less than or equal to 80% of your adjusted predisability earnings,
> you will not be deemed to be working at:
>
> > Your own occupation; or
> > Any reasonable occupation.
>
> The first period will not be included if it began while you were not
> covered under this LTD plan."

Under this language, two periods of disability which are separated by a period of work for "less than three months" can be linked and treated as one continuous period of disability.

After reviewing Plaintiff's request for continuation of his LTD benefits, Aetna concluded that Plaintiff was not entitled to treat his two periods of disability as one. Aetna denied reinstatement of Plaintiff's LTD benefits because his two periods of disability were separated by more than three months, and thus the "Separate Periods of Disability" provision did not apply. Aetna reasoned that Plaintiff's first period of disability ended on December 4, 2000, the date he resumed full-time employment. Plaintiff worked full-time from December 4, 2000, through March 9, 2001, his last day of work, so Plaintiff's beginning date for his second period of disability was March 10, 2001. Therefore, in order for the two periods of disability to link under the "Separate Periods of Disability" provision, Plaintiff must be deemed to have worked for less than three months.

In applying the "Separate Periods of Disability" exception, Aetna looked at the days Plaintiff received no pay to determine whether there were any days Plaintiff could be deemed not working "solely due to disease or injury" where Plaintiff's income was "less than or equal to 80% of [his] adjusted predisability earnings." Aetna reviewed Plaintiff's records and determined that from December 4, 2000, through March 9, 2001, Plaintiff received no pay for five days. Therefore, Aetna reasoned that Plaintiff returned to work for more than three months, and denied Plaintiff's request to reinstate LTD benefits on February 7, 2002.

Because Aetna only insured the Plan through midnight December 31, 2000, and HCA had engaged a new carrier, UNUM, effective January 1, 2001, Aetna informed Plaintiff that he was no longer covered under Aetna's policy and directed Plaintiff to contact UNUM. Plaintiff then contacted and filed a LTD application with UNUM. UNUM denied Plaintiff's request for LTD benefits on May 7, 2004. Plaintiff did not appeal UNUM's denial, and instead, on August 11, 2004, appealed Aetna's initial denial. On September 29, 2004, Aetna informed Plaintiff that his letter of appeal was well outside the appeal filing time-frames and that it was under no obligation to review Plaintiff's claims, but nevertheless identified several pieces information Plaintiff needed to submit in order for Aetna to review his claim. On November 1, 2004, Plaintiff submitted additional information; on November 19, 2004, Aetna identified additional information it needed to conduct its review. On June 9, 2005, Plaintiff submitted the final information, and on June 16, 2005, Aetna denied Plaintiff's request for LTD benefits stating that his separate periods of disability were separated by more than three months and could not be joined, and the second period of disability occurred after Aetna's policy with HCA ended on December 31, 2000. Plaintiff then filed this lawsuit on July 13, 2005.

**II.     Parties' Claims**

Plaintiff now sues Aetna for payment of LTD benefits denied him under the Plan. He contends that he has a recurrent disability under the terms of the Plan and is entitled to ongoing LTD benefits under the "Separate Periods of Disability" provision of the Plan. Plaintiff argues Aetna's interpretation of the Plan was wrong, that the facts and terms of the policy establish that his periods of disability were separated by less than three months and must be linked. Finally, Plaintiff adds that Aetna's interpretation of the Plan was unreasonable and tainted by self-interest, and therefore Plaintiff is entitled to the LTD benefits under the Plan.

Aetna first argues that Plaintiff's claims are time-barred. Alternatively, Aetna contends that the "Separate Periods of Disability" exception does not apply to Plaintiff because Plaintiff returned to work for more than three months. Aetna argues its interpretation of the Plan was correct and reasonable and should be sustained.

**III.    Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986). On a motion for summary judgment, the Court must review the record, and all its inferences, in the light most favorable to the nonmoving party. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

Having done so, the Court finds that Aetna is entitled to summary judgment in its favor. The record shows that Aetna's denial of LTD benefits to Plaintiff was both correct and reasonable.

5

**IV.    Standard of Review**

The parties (and the Court) agree that the heightened arbitrary and capricious standard of review is applicable in this case, in which it is undisputed (1) that the terms of the Plan vest Aetna with discretion to determine eligibility for benefits or to construe the terms of the Plan and (2) that Aetna operates under a "strong conflict of interest," in that it "serves as the decisionmaking fiduciary for benefits that are paid out of [its own] assets." Brown v. Blue Cross & Blue Shield of Ala., Inc., 898 F.2d 1556, 1561-62 (11th Cir. 1990).[1] Heightened arbitrary and capricious review generally calls for a three-step analysis. First, the Court must conduct a *de novo* review to determine whether the decision to deny benefits was "wrong." See HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co., 240 F.3d 982, 994 (11th Cir. 2001). If the Court finds the decision was not "wrong," then the Court upholds the administrator's denial. If the Court finds the decision is wrong, the Court must then proceed to the second step to determine whether the decision was nevertheless reasonable. Id. If the decision was wrong, but reasonable, the Court must proceed to the third step to "gauge the self-interest of the claims administrator." Id. At this stage the burden shifts to the administrator to prove that its interpretation of the Plan is not "tainted by self interest" by showing that "his wrong but reasonable interpretation of the plan benefits the class of participants and beneficiaries." Id. at 994-95.

---

[1] The Plan states: "Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. . . . In exercising such fiduciary responsibility, Aetna shall have discretionary authority to: determine whether and to what extent employees and beneficiaries are entitled to benefits; and construe any disputed or doubtful terms of this policy. Aetna shall be deemed to have properly exercised such authority unless Aetna abuses its discretion by acting arbitrarily and capriciously."

The Court will first discuss Aetna's argument that Plaintiff's claims are time-barred and then proceed to examine the merits of the case under this heightened arbitrary and capricious standard.

V.      **Discussion**

   A.    **Statute of Limitations**

Aetna first contends that it is entitled to summary judgment because Plaintiff's claims are time-barred under the contractual limitations period established in the Plan. Although courts generally look to state law for a limitations period in ERISA claims, in cases like the one here, filed under 29 U.S.C. § 1132(a)(1)(B), "contractual limitations periods on ERISA actions are enforceable, regardless of state law, provided they are reasonable." Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Ben. Plan, 160 F.3d 1301, 1303 (11th Cir. 1998) (upholding contractual limitations period of 90 days after appeal determination to file lawsuit); see also Hembree v. Provident Life & Accid. Ins. Co., 127 F. Supp. 2d 1265, 1269-70 (N.D. Ga. 2000) (upholding three-year contractual statute of limitations period).

Here, the Plan contains a statute of limitations for legal actions of three years from the deadline for filing a claim for benefits. The deadline for filing claims is 90 days after the end of the waiting period. Aetna argues that Plaintiff's claim for benefits arose on March 10, 2001, the day after his last day of work, and therefore the statute of limitations expired on June 7, 2004–three years and 90 ninety days after March 10, 2001. Hence, Aetna contends, because Plaintiff filed his lawsuit on July 13, 2005, over a year after the maximum limitations period expired, Plaintiff's claims are time-barred. Plaintiff argues that his claims are not time-barred because this suit was filed immediately after he had exhausted his administrative remedies, and

the statutory period for bringing suit is tolled while a plaintiff exhausts his administrative remedies. The Court agrees with Plaintiff.

As reasoned in Jack L. Jeffries v. Trs. of the Northrop Grumman Sav. & Inv. Plan, because the Eleventh Circuit has held that ERISA plaintiffs should be required to exhaust administrative remedies before bringing suit in federal court, "[c]ommon sense and basic fairness dictate that if we are willing to read in an exhaustion requirement, we must toll the limitations period while exhaustion occurs." 169 F. Supp. 2d 1380, 1382 (M.D. Ga. 2001) (quoting Radford v. Gen. Dynamics Corp., 151 F.3d 396, 401 (5th Cir. 1998)).

Here, Plaintiff did not exhaust his administrative remedies until June 16, 2005, when Aetna upheld its denial of LTD benefits and informed him no further review of his file would be conducted. Aetna first denied Plaintiff's claim on February 7, 2002, and advised Plaintiff to contact UNUM–the new LTD carrier for HCA–to determine whether he was eligible for benefits under their plan. Plaintiff then pursued that course. UNUM did not deny Plaintiff's request for benefits until over two years later, on May 7, 2004.[2] Approximately three months after UNUM's denial, on August 1, 2004, Plaintiff appealed Aetna's previous denial of coverage. On September 29, 2004, Aetna responded and requested additional information needed to review Plaintiff's claim. Plaintiff submitted additional information on November 1, 2004, and Aetna again responded, by letter dated November 19, 2004, it needed yet more information. Plaintiff submitted the additional information on June 9, 2005. On June 16, 2005, Aetna upheld its original denial of LTD benefits and informed Plaintiff it would conduct no further review of his

---

[2] Although it is unclear why it took UNUM over two years to deny Plaintiff's claim, the Court finds no evidence to suggest that Plaintiff was dilatory in applying for LTD benefits with UNUM.

file.  Less than one month later, on July 13, 2005, Plaintiff filed this lawsuit.  Because Plaintiff did not exhaust his administrative remedies until Aetna's final denial on June 16, 2005, Plaintiff's Complaint filed on July 13, 2005, was timely.

Having found Plaintiff's Complaint timely filed, this Court now turns to the merits of this action.

### B. Aetna's Interpretation of the Plan

Based on a *de novo* review of this case, this Court finds that Aetna's decision to deny LTD benefits was not "wrong."  The *de novo* review essentially requires the Court to act as an insurance adjuster and substitute its judgment for the judgment of the claims administrator.  A decision is "wrong" if the "the court disagrees with the administrator's decision."  Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1138 (11th Cir. 2004).

The record before this Court supports Aetna's interpretation that the "Separate Periods of Disability" exception does not apply in this case because Plaintiff's two periods of disability were not "separated by less than three months."   Plaintiff essentially asserts two arguments in support of his position that Aetna's interpretation of the Plan was wrong: (1) Aetna used the wrong ending date of Plaintiff's first period of disability; and (2) Aetna improperly calculated the number of days Plaintiff was "deemed to be working" during his brief return to work.  Plaintiff's arguments, however, are unavailing.

Aetna was correct in its interpretation that Plaintiff's first period of disability ended on December 4, 2000, the date on which Plaintiff returned to work.  The Plan states that a "period of total disability ends on the first to occur of:

- The date you are not totally disabled;
- The date you start work at a reasonable occupation.

- The date you have income from any employer or from any occupation for compensation or profit equal to more than 80% of your adjusted predisability earnings."[3]

Plaintiff started work at a reasonable occupation on December 4, 2000, receiving income of more than 80% of his predisability earnings; therefore his first period of disability ended on December 4, 2000.[4]

Although Aetna paid Plaintiff LTD benefits through December 28, 2000, this date is not the correct end date for Plaintiff's first period of disability. Nowhere does the Plan suggest that the end of a "period of disability" hinges on Aetna's payment or nonpayment of benefits. Furthermore, Aetna paid the LTD benefits through December 28th based on Plaintiff's representations to Aetna representatives during an on-site interview on November 2, 2000, and again in a telephone conversation on November 10, 2000, that he was returning to work on December 29, 2000. Aetna did not learn of Plaintiff's return to work on the earlier December 4th date until a year later, in December 2001 during its review of Plaintiff's submitted information for his application for LTD benefits for his second period of disability. Because

---

[3] A "period of total disability" may also end on the first to occur of: "The date you fail to give proof that you are still totally disabled; The date you refuse to be examined; The date you cease to be under the care of a physician; The date you reach the expiration of the Maximum Benefit Duration shown on the Summary of Coverage; The date you become eligible for benefits under any other long term disability benefits plan carried or sponsored by your Employer, if such date occurs after the date the group policy terminates; The date you are not undergoing effective treatment for alcoholism or drug abuse, if your disability is caused to any extent by alcoholism or drug abuse; The date you have income from any employer or from any occupation for compensation or profit equal to more than 80% of your adjusted predisability earnings; The date you fail to give proof that you are unable to perform the duties of any occupation for compensation or profit equal to more than 80% of your adjusted predisability earnings; The date of your death."

[4] Plaintiff's pre-disability monthly income was $4,333.33, and his monthly income at Skyline Medical was $6,250.40.

Aetna lacked the requisite knowledge of Plaintiff's employment, Aetna's payment of benefits through December 28, 2000, was in no way a waiver of its right to rely on the Plan provisions that define when a "period of total disability" ends. Waiver requires the intentional relinquishment of a known right. See Glass v. United Omaha Life Ins. Co., 33 F.2d 1341 (11th Cir. 1994) (no waiver where insurer did not know that the insured was on a leave of absence and therefore not eligible for benefits); Burger v. Life Ins. Co. of N. Am., 103 F. Supp. 2d 1344, 1348-49 (N.D. Ga. 2000) (insurer waived right to recover overpayment of disability benefits when it knew for three years that claimant earned wages that should have been an offset to his benefits).

Aetna also correctly calculated that Plaintiff's two periods of disability were separated by more than three months and therefore was not entitled to treat his two periods of disability as one under the "Separate Periods of Disability" of the Plan. That provision states:

> Once a period of total disability has ended, any new period of disability will be treated separately.
>
> However, 2 or more separate periods of total disability due to the same or related causes, which are separated by less than 3 months, will be deemed to be one period of total disability. Only one waiting period will apply.
>
> Any day on which, solely due to disease or injury, your income is less than or equal to 80% of your adjusted predisability earnings, you will not be deemed to be working at:
>
>> Your own occupation; or
>> Any reasonable occupation.
>
> The first period will not be included if it began while you were not covered under this LTD plan."

Under this language, two periods of disability which are separated by an employee deemed to be "working" for "less than three months," can be treated as one period of disability. In computing "less than three months," days in which an employee's income is less than or equal to 80% of his adjusted predisability income *solely due to* disease or injury, will be excluded.

Plaintiff worked from December 4, 2000, through March 9, 2001, a period of three months and six days. The question is whether Plaintiff can not be "deemed working" during any part of this time period. In other words, whether there were any work days during that three month and six day work period Plaintiff had earnings of less than 80% solely due to disease or injury. This Plan provision is compensation-based, not attendance-based, so it is appropriate to focus on Plaintiff's earnings during his return to work. The record shows that during Plaintiff's return to work, Plaintiff received no pay for five work days. Even assuming that Plaintiff missed each of those five days solely due to his disease, in subtracting the five days that Plaintiff was not "deemed working" from the three-month-and-six-day total period Plaintiff worked, Aetna correctly calculated that Plaintiff worked three months and one day. Thus, Plaintiff does not meet the requirements under the "Separate Periods of Disability" exception requiring that Plaintiff work for "less than three months." Plaintiff returned to work long enough that any disability on March 10, 2001, was a new period of disability that did not connect with the first period of disability ending December 4, 2000. Accordingly, Aetna's denial of LTD benefits was correct.

## CONCLUSION

As set forth above, the Court finds that Aetna's decision to deny Plaintiff LTD benefits was correct. Accordingly, Aetna's motion for summary judgment [Doc. 14] is **GRANTED** and Plaintiff's motion [Doc. 16] is **DENIED**.

**SO ORDERED**, this 21st day of March, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH/aeg